# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1110**
**KA 11-00536**
PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND LINDLEY, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                          MEMORANDUM AND ORDER

TIMOTHY L. JERGE, DEFENDANT-APPELLANT.

---

THOMAS THEOPHILOS, BUFFALO, FOR DEFENDANT-APPELLANT.

LORI PETTIT RIEMAN, DISTRICT ATTORNEY, LITTLE VALLEY, FOR RESPONDENT.

---

Appeal from a judgment of the Cattaraugus County Court (Larry M. Himelein, J.), rendered March 14, 2011. The judgment convicted defendant, upon a jury verdict, of sexual abuse in the second degree, course of sexual conduct against a child in the second degree and endangering the welfare of a child.

It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, sexual abuse in the second degree (Penal Law § 130.60 [2]) and course of sexual conduct against a child in the second degree (§ 130.80 [1] [b]). We agree with defendant that County Court erred in denying his motion to set aside the verdict based on juror misconduct.

CPL 330.30 provides in relevant part that a court may, upon motion of the defendant, set aside a verdict on the ground that "during the trial there occurred, out of the presence of the court, improper conduct by a juror . . ., which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]). As a general rule, "a jury verdict may not be impeached by probes into the jury's deliberative process; however, a showing of improper influence provides a necessary and narrow exception to the general proposition" (*People v Maragh*, 94 NY2d 569, 573; *see People v Brown*, 48 NY2d 388, 393; *People v Scerbo*, 59 AD3d 1066, 1068, *lv denied* 12 NY3d 821). Improper influence encompasses "even well-intentioned jury conduct which tends to put the jury in possession of evidence not introduced at trial" (*Brown*, 48 NY2d at 393).

"Of course, not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically" (*id.* at 394). Rather, "[e]ach case must be examined on its unique facts to

determine the nature of the misconduct and the likelihood that prejudice was engendered" (*People v Clark*, 81 NY2d 913, 914; *see Scerbo*, 59 AD3d at 1068). Juror misconduct constitutes reversible error where "(1) jurors conduct[ ] personal specialized assessments not within the common ken of juror experience and knowledge (2) concerning a material issue in the case, and (3) communicat[e] that expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence" (*Maragh*, 94 NY2d at 574; *see People v Santi*, 3 NY3d 234, 249).

Here, the evidence at the post-trial hearing on defendant's CPL 330.30 motion established that two jurors interjected their professional knowledge into the jury deliberations by voicing professional opinions that were not the subject of expert testimony at trial (*see Maragh*, 94 NY2d at 575-576). The subject jurors -- a caseworker employed by a county department of social services (DSS) with a bachelor's degree in social work and a licensed substance abuse counselor with a bachelor's degree in human services -- conveyed to the rest of the jury panel that they had professional experience working with or counseling child victims of sexual abuse. According to the two jurors who testified at the hearing concerning the subject jurors, the DSS caseworker advised the jury that she worked in a child protective capacity. One of the testifying jurors recalled that, when members of the jury voiced concerns about the victim's credibility based upon, inter alia, her inability to recall dates or details about the sexual abuse, the delay in reporting, and the victim's failure to avoid defendant, the subject jurors made statements to the effect that "we deal with this every day," and "this is the pattern of how these things normally take place." That juror explained that "it was a lot like [the subject jurors] were testifying in the jury room," and he expressly testified that he was swayed by the opinions of the subject jurors in voting to convict defendant. The other testifying juror similarly recalled that, when members of the jury questioned the victim's credibility, the subject jurors responded, "that is how a sexually abused victim would act and that's normal behavior." She testified that the subject jurors said that it was "normal" for sexual abuse victims to "block . . . out" the abuse and that, as a result, "they wouldn't be able to remember" specific dates, times and places. According to that juror, one of the subject jurors went so far as to tell the jury that, when he had worked with child victims of sexual abuse, "this is how they would act." The juror testified that she changed her vote from acquittal to conviction based on the opinions of the subject jurors.

In denying defendant's CPL 330.30 motion, the court erred in concluding that it was "common knowledge" that victims of sexual abuse may both delay reporting and be unable to recall specifics of the abuse. The behavior and response of a victim of sexual abuse is "not within the common ken of juror experience and knowledge" (*Maragh*, 94 NY2d at 574; *see People v Taylor*, 75 NY2d 277, 289). Indeed, it is not uncommon for courts to permit expert testimony on precisely the subject at issue here, i.e., the behavior of a victim of sexual abuse (*see e.g. People v Carroll*, 95 NY2d 375, 387; *Taylor*, 75 NY2d at 289; *People v Torres*, 78 AD3d 866; *People v Gregory*, 78 AD3d 1246, 1247, *lv*

*denied* 16 NY3d 831; *People v Wellman*, 166 AD2d 302, *lv denied* 78 NY2d 958).

We thus agree with defendant that the subject jurors offered improper professional opinions that were not the subject of expert testimony and were not subject to cross-examination, thereby depriving defendant of a fair trial (*see Maragh*, 94 NY2d at 575-576; *People v Stanley*, 87 NY2d 1000, 1001-1002). Indeed, the subject juror comments in this case are particularly problematic because they stated not only that sexual abuse victims may delay reporting or be unable to recall specifics of the abuse, which may be the proper subject of expert testimony (*see Gregory*, 78 AD3d at 1247), but they also went a step further and opined that, "based upon their professional experience, [the victim] acted like a victim of sexual abuse." That was improper (*see Carroll*, 95 NY2d at 387).

In light of our determination that reversal is required, we need not address defendant's remaining contentions.

All concur except FAHEY, J., who dissents and votes to modify in accordance with the following Memorandum: I respectfully dissent because I do not agree with the majority that County Court erred in denying defendant's post-trial motion pursuant to CPL 330.30 (2) seeking to set aside the verdict based on juror misconduct. I dissent insofar as the majority concludes that reversal is required on that ground. Nevertheless, I would vote to modify the judgment as a matter of discretion in the interest of justice, and on the law, by reversing that part convicting defendant of sexual abuse in the second degree under count two of the indictment inasmuch as that count was rendered duplicitous by the testimony at trial, as I shall discuss herein. I would dismiss that count without prejudice to the People to re-present any appropriate charge under that count to another grand jury.

"Generally, a jury verdict may not be impeached by probes into the jury's deliberative process," but CPL 330.30 embodies the "narrow exception to [that] general proposition" (*People v Maragh*, 94 NY2d 569, 573). That statute provides, in relevant part, that the court may, upon motion of the defendant, set aside the verdict on the ground "[t]hat during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]).

Here, at the hearing on his CPL 330.30 motion, defendant presented the testimony of two jurors. The first testifying juror stated on direct examination that three other jurors, i.e., juror Nos. 27, 68 and 98 (collectively, subject jurors), said "we deal with this every day" and "this is the pattern of how these things normally take place." Based on the context of the first juror's testimony, the testimony appears to indicate that the subject jurors were familiar with victims of sexual abuse. Juror No. 27 worked as the head strength and conditioning coach in a university athletic department, juror No. 68 was a caseworker with the Cattaraugus County Department

of Social Services, and juror No. 98 worked as a "substance abuse, mental health counselor." The first testifying juror did not state that the subject jurors had indicated that they counseled victims of sexual abuse, but maintained that the subject jurors said that their knowledge was based upon their professional backgrounds in dealing with such issues. The first testifying juror also indicated that his vote was influenced by the comments of the subject jurors during deliberations, and that he was the last juror to vote to convict defendant.

The cross-examination of the first testifying juror confirmed that he was influenced by the comments of the subject jurors, and explained the basis, or lack thereof, for his reliance on those jurors. The first testifying juror acknowledged that he learned of the backgrounds of the subject jurors during voir dire, and indicated that he "just assumed" that one of the opinions expressed by juror No. 68 during deliberations "was because of her professional experience." Indeed, the first testifying juror agreed that the subject jurors never indicated during deliberations that they worked with or counseled sexual abuse victims, and he concluded his testimony on cross-examination with an expression of remorse over having been the last of the jurors to change his mind and vote to convict defendant.

For her part, the second testifying juror stated at the hearing that juror Nos. 68 and 98 had indicated during deliberations that they had a specialized background in sexual abuse issues and had worked with sexually abused children. The second testifying juror indicated that assurances of juror Nos. 68 and 98 assuaged her concerns with parts of the victim's testimony, and that she eventually relied on the knowledge and opinions of juror Nos. 68 and 98 in changing her vote from acquittal to conviction.

On cross-examination, however, the second testifying juror, who was not a holdout juror, was equivocal as to whether juror Nos. 68 and 98 influenced her vote. The second testifying juror denied "saying that [she] gave somebody's opinion more credibility than somebody else's," and contended that she "ha[s] [her] own mind," "listened" during deliberations and "took [the opinion in question] into [her] own mind and processed it."

Subsequent to the testimony of defendant's witnesses at the CPL 330.30 hearing, and at the People's request, the court denied the motion on the ground that defendant failed to meet his burden of proof even in the absence of testimony from witnesses yet to be presented by the People. The court later issued a written decision in which it determined "that the complained of conduct . . . does not rise to the level of juror misconduct." That conclusion was based, at least in part, on the court's finding that the first testifying juror "admitted that he regretted his verdict and conceded that he did not hear specific reference to any one juror's professional experience." In view of its citations to, inter alia, *People v Rodriguez* (100 NY2d 30), *People v Robinson* (1 AD3d 985, *lv denied* 1 NY3d 633, 2 NY3d 805) and *People v Stevens* (275 AD2d 902, *lv denied* 96 NY2d 807), and its finding that the second testifying juror "adamantly said she made up

her own mind on the verdict," the court also appeared to conclude that the conduct at issue did not prejudice defendant (*cf. People v Concepcion*, 17 NY3d 192, 195).

"In order to prevail on [his] motion, defendant was required to establish 'by a preponderance of the evidence that improper conduct by a juror prejudiced a substantial right of' defendant" (*People v Carmichael*, 68 AD3d 1704, 1705, *lv denied* 14 NY3d 798; *see* CPL 330.40 [2] [g]).  "The trial court is invested with discretion and post[-]trial fact-finding powers to ascertain and determine whether the activity during deliberations constituted misconduct and whether the verdict should be set aside and a new trial ordered" (*Maragh*, 94 NY2d at 574; *see Rodriguez*, 100 NY2d at 35), and, under these circumstances, I cannot agree with the majority that the disputed activity during deliberations warrants impeachment of the verdict.

Put simply, the testimony of the first testifying juror, who seemed to have second thoughts about the verdict and who could not state that any of the subject jurors had indicated during deliberations that they worked with or counseled sexual abuse victims, does not support a finding of juror misconduct (*see generally People v Santi*, 3 NY3d 234, 249-250).  "The court's determination that there was no misconduct . . . must be afforded great weight" (*People v Brown*, 278 AD2d 920, *lv denied* 96 NY2d 781), and there is no reason to disturb it on the basis of the testimony of the first testifying juror.

Even assuming, arguendo, that the testimony of the second testifying juror establishes juror misconduct (*see generally Santi*, 3 NY3d at 249; *Maragh*, 94 NY2d at 574), I conclude under these circumstances there was no showing of prejudice to a "substantial right" of defendant as a result of that misconduct (CPL 330.30 [2]; *see Carmichael*, 68 AD3d at 1705-1706).  Inasmuch as the second testifying juror, who was not a holdout juror, admitted on cross-examination that she had an independent mind and thought process with respect to the verdict, I cannot conclude that defendant established that the second testifying juror based her verdict on something other than the evidence presented at trial (*cf. Carmichael*, 68 AD3d at 1705-1706; *see generally Robinson*, 1 AD3d at 986).  Thus, in my view, defendant did not meet his burden of showing "by a preponderance of the evidence" that the conduct at issue prejudiced a substantial right of defendant (CPL 330.40 [2] [g]; *see Rodriguez*, 100 NY2d at 35; *Carmichael*, 68 AD3d at 1705-1706), and there is no reason to disturb the court's determination on that basis (*see Brown*, 278 AD2d 920).

I turn now to the remaining issues not addressed by the majority in light of its determination with respect to defendant's post-trial motion pursuant to CPL 330.30 (2).  Defendant challenges the procedure employed by the court in responding to a jury note, specifically contending that the court erred in issuing supplemental instructions to the jury in his absence.  Inasmuch as defense counsel was given notice of the note, its contents and the court's intended response thereto, "[d]efendant therefore was required to register an objection

in order to preserve for our review his challenge to the procedure employed by the court in responding to the jury note[], 'at a time when any error by the court could have been obviated by timely objection' " (*People v Rivera*, 83 AD3d 1370, 1370-1371, quoting *People v Starling*, 85 NY2d 509, 516; *see People v Kadarko*, 14 NY3d 426, 429). I would not exercise my power to address that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). Contrary to defendant's further contention, defense counsel was not ineffective in failing to object to the procedure employed by the court in responding to the note. Defendant failed " 'to demonstrate the absence of strategic or other legitimate explanations' for [defense] counsel's alleged shortcomings" (*People v Benevento*, 91 NY2d 708, 712, quoting *People v Rivera*, 71 NY2d 705, 709; *see generally People v Baldi*, 54 NY2d 137, 147).

Defendant failed to preserve for our review his contention that the court's *Allen* charge was coercive, having failed to object to the charge on that ground (*Allen v United States*, 164 US 492; *see People v Vassar*, 30 AD3d 1051, *lv denied* 7 NY3d 796). In any event, that contention lacks merit (*see People v Roman*, 85 AD3d 1630, 1631, *lv denied* 17 NY3d 821). "Furthermore, '[b]ecause the *Allen* charge was not improper, the defendant's ineffective assistance of counsel claim, [insofar as it is] based . . . on his attorney's failure to object to the charge, is without merit' " (*id.*).

Defendant also failed to preserve for our review his contention that the indictment is duplicitous (*see People v Becoats*, 17 NY3d 643, ___; *People v Heard*, 72 AD3d 1630, *lv denied* 15 NY3d 852). In any event, that contention is moot with respect to counts one and four of the indictment inasmuch as defendant was acquitted of those counts (*see People v Haberer*, 24 AD3d 1283, *lv denied* 7 NY3d 756, 848). I would, however, exercise my power to review defendant's contention with respect to count two of the indictment as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]), because I agree with defendant that count two, charging him with sexual abuse in the second degree (Penal Law § 130.60 [2]), was rendered duplicitous by the testimony at trial (*see People v Bennett*, 52 AD3d 1185, 1186, *lv denied* 11 NY3d 734). I would therefore modify the judgment accordingly, as set forth herein (*see id.; People v Bracewell*, 34 AD3d 1197, 1198-1199).

Finally, I have reviewed defendant's remaining contentions and conclude that none requires reversal or further modification of the judgment.

Entered: December 23, 2011

Frances E. Cafarell
Clerk of the Court